UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| MICHAEL K. MITCHELL, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No. 3:17-cv-00973 |
| STATE OF TENNESSEE, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Michael K. Mitchell brought this action pursuant to 42 U.S.C. § 1983, alleging that he was regularly subjected to various forms of mistreatment while institutionalized at the Lois M. DeBerry Special Needs Facility ("DSNF") in late 2016 and early 2017. (Doc. No. 114 at 3–12). Many of his allegations have been debunked by this Court. (Doc. No. 166). However, Defendants have established that his remaining claims were brought prematurely because Mitchell has not yet exhausted the administrative remedies offered by the Tennessee Department of Corrections ("TDOC"), as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e (the "PLRA"). For the forgoing reasons, the Court will grant Defendants' Motions for Summary Judgment (Doc. Nos. 213, 216) and dismiss his claims without prejudice.

## I. FACTUAL ALLEGATIONS AND BACKGROUND[1]

Soon after Mitchell was transferred to DSNF, several alleged incidents occurred that gave rise to this action. (Doc. No. 114 at 3–12). Three are relevant to Defendants' instant motions

---

[1] The facts in this section are undisputed unless specifically noted otherwise and are drawn from the undisputed portions of the parties' statements of facts (Doc. Nos. 226, 227, 228, 229), the exhibits, depositions, and declarations submitted in connection with the summary judgment briefing that are not contradicted by the evidence in the record.

(Doc. Nos. 213, 216): on January 9, 2017, Defendant Wooten used excessive force against Mitchell while leading Mitchell from the showers to his cell and immediately thereafter, (Doc. No. 114 at 7); and, on January 18, 2017, and again on February 1, 2017,[2] Mitchell received forced injections of antipsychotic medication that had been authorized by Defendant O'Toole and administered each time by some combination of Defendants Estes, Cornett, Davis, Flach, Talley, and Wooten (together, "State Defendants").[3] (Doc. Nos. 114 at 6–7; 227 ¶¶ 38–43).

At the time of these alleged incidents and at all relevant times thereafter, TDOC's Policy #501.01 (the "Policy") dictated the Department's grievance review process and served as the exclusive administrative remedy available to inmates. (Doc. Nos. 227 ¶ 21; 226 ¶ 27). The Policy created the following three-tiered grievance review process:

1. <u>First Level</u>. Grievances must be filed utilizing CR-1394 within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance. The chairperson shall review all grievances received and log[] them as received. . . .

    The chairperson's response shall be written on CR-1394 following the chairperson's receipt and review of the supervisor's response. There will be a seven working-day time limit at Level I beginning on the day the grievance begins to be processed. If a grievant accepts the supervisor's response documented on Response of Supervisor of Grieved Employee or Department, CR-3148[,] the grievance chairperson shall enter the approval. . . .

2. <u>Second Level</u>: Within five calendar days of being notified of the Level I response, the grievant may appeal the response to the grievance committee and Warden. A hearing shall be held within five working days of an appeal's filing. Within five working days of the hearing, the committee's proposed response shall be documented . . . and forwarded to the Warden. Within seven working days of receipt, the Warden shall forward his/her decision to the chairperson. Within five working days of receiving the Warden's response, the chairperson will allow the grievant to review the grievance materials and responses. If the grievant accepts the Level II response, the grievance

---

[2] After filing his Amended Complaint (Doc. No. 114), Mitchell conceded that he did not receive a third forced injection on February 15, 2017. (Doc. No. 226 ¶ 25).

[3] These were not the only incidents that Mitchell complained of. (Doc. No. 114 at 3–7). Mitchell made several allegations, which were described in detail by the Magistrate Judge, (Doc. No. 153 at 3–10), and addressed and disposed of by this Court in a previous Order. (<u>See generally</u> Doc. No. 166). The Court need not recount each again here.

> chairperson shall enter the approval. . . . If the Warden agrees to the grievant's requested solution, the grievant shall not have the right to appeal to Level III. . . .
>
> 3. <u>Third Level</u>: A grievant may appeal the Level II response within five calendar days of receipt of that response. The chairperson shall forward one legible copy of the grievance and all documentation to the Deputy Commissioner of Operations/designee. The Level III response shall be sent to the grievance chairperson for distribution within 25 working days of the date the appeal was received. The chairperson shall enter the final decision. . . . This response is final and not subject to appeal.

(Doc. No. 217-16 at 2–3). The Policy also specifically provided that "[if] a time limit expires at any stage of the process without the required response, the grievant may move the grievance to the next stage of the process." (<u>Id.</u> at 3). This was the only version of the Policy in effect during the time of the alleged events at issue. (Doc. No. 217-16 at 7 (indicating that this version of the Policy expired on August 12, 2017)).

In the days and weeks after the alleged use of excessive force and two forced injections, Mitchell filed, at most, seven grievances related to the incidents.[4] More specifically, Mitchell filed his first Level I grievance concerning Wooten's alleged use of excessive force on the day it occurred, January 9, 2017, (Doc. No. 227 ¶ 24), but it was rejected because Mitchell incorrectly dated the form. (<u>Id.</u>). He filed three additional Level I grievances about the incident—on January 10, 2017, January 27, 2017, and February 6, 2017[5]—but claims that he never received a response.[6] (Doc. No. 229 ¶¶ 6, 8, 10). On January 24, 2017, and January 25, 2017, Mitchell filed Level I

---

[4] The parties dispute whether certain of these grievances were correctly filed or filed at all. (<u>See e.g.,</u> Doc. No. 229 ¶ 5 (demonstrating a dispute over whether TDOC employees refused to receive certain grievances)). For the pending motions, the Court will assume that Mitchell submitted each Level I grievance and that the grievance chairperson failed to respond to each Level I grievance that was not returned to Mitchell.

[5] Mitchell claims that his February 6, 2017, grievance also addressed his forced injections. (Doc. No. 229 ¶ 9).

[6] In his briefing, Mitchell asserts that his March 24, 2017, grievance concerns Wooten's alleged use excessive force on January 9, 2017. (Doc. No. 222 at 6). This has no basis in fact. That grievance is completely devoid of any reference—explicit or otherwise—to that incident or Wooten. (Doc. No. 217-3 at 15–22). The Court need not pretend it does.

3

grievances regarding his first forced injection, (Doc. Nos. 228 ¶ 4; 227 ¶ 29), and, after he received his second forced injection, Mitchell filed a third Level I grievance on February 13, 2017. (Doc. Nos. 226 ¶ 31; 227 ¶ 23). However, the January 24 and 25 grievances were rejected because the grievance chairperson found that Mitchell failed to properly complete the form or include sufficient information to process the grievance, (Doc. Nos. 217-19 at 1; 217-20 at 1), and his February 13 grievance was rejected because Mitchell failed to file it within the Policy's allotted seven-day period. (Doc. No. 226 ¶ 33).

Before bringing this action, Mitchell never appealed any of the Level I responses he received, nor did he escalate a grievance to the next stage when he did not receive a timely response from the grievance chairperson. (See Doc. Nos. 227 ¶¶ 24, 28–30; 229 ¶¶ 6, 8, 10 (conceding that he filed multiple Level I grievances about the same event but did not appeal any grievance returned to him); see also Doc. No. 222 at 4–5 (asserting that Plaintiff did not appeal grievances that were not returned to him)).

## II.  LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case. Id.

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

Moreover, if, "after adequate time for discovery and upon motion," the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which that party will bear the burden of proof at trial[,]" a court should enter summary judgment in favor of the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When this occurs, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 323 (citation and internal quotation marks omitted). Conclusory statements "unadorned with supporting facts are insufficient." Viet v. Le, 951 F.3d 818, 823 (6th Cir. 2020). Thus, if the nonmovant does not support the elements of a claim or defense, the moving party is entitled to judgment as a matter of law.

### III. ANALYSIS

Defendants move for summary judgment on numerous grounds, (Doc. Nos. 214 at 10–17; 218 at 7–16), but the Court need only reach one—Mitchell's failure to exhaust the available administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e. Failure to exhaust is an affirmative defense that must be established by a defendant. Jones v. Bock, 549

5

U.S. 199, 216 (2007). Once a failure-to-exhaust defense has been raised and supported in a motion for summary judgment, the burden is on the plaintiff to present "significant probative evidence" to show that he has complied with the requirements of exhaustion. Napier, 636 F.3d at 225 (citation omitted); see also Washington v. Hindsley, No. 3:14-CV-01465, 2014 WL 6818965, at *3 (M.D. Tenn. Dec. 2, 2014) ("It is the Plaintiff's burden to rebut the Defendants' supporting evidence that shows his failure to exhaust."). If the plaintiff fails to present such evidence, the action must be dismissed without prejudice. Bell v. Kontech, 450 F.3d 651, 653 n.4 (6th Cir. 2006) ("It is well established . . . that the appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice.").

    A. <u>The Prison Litigation Reform Act's Exhaustion Requirement</u>

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court. Jones, 549 U.S. at 211. Thus, a prisoner must exhaust all available remedies before filing an action in court. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the statute makes exhaustion a precondition to filing an action in federal court.").

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218 (citation omitted). To properly exhaust his administrative remedies, an inmate must satisfy all deadlines and other procedural rules of the prison's grievance system for all issues about which he complains. Woodford v. Ngo, 548 U.S. 81, 84-85 (2006); Reed-Bey v. Pramstaller, 603 F.3d 322, 324 (6th Cir. 2010)). "[E]xhaustion is required even if the

6

prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and 'even where [the prisoners] believe the procedure to be ineffectual or futile[.]'" Napier v. Laurel Cty., Ky., 636 F.3d 218, 222 (6th Cir. 2011) (internal citations omitted). "[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations. Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999); see also Scott v. Ambani, 577 F.3d 642, 647 (6th Cir. 2009) ("Woodford makes clear that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance."). When an inmate only partially exhausts a claim, does not appeal the denial of a grievance, or abandons the process, dismissal is warranted. See Hartsfield, 199 F.3d at 309.

The exhaustion requirement exists even if the state describes its grievance system in permissive rather than mandatory language. See Owens v. Keeling, 461 F.3d 763, 770 n.4 (6th Cir. 2006) (explaining that "although a remedy must be 'available' in order for a prisoner to be required to pursue it to exhaust his claim, this does not mean that the prison must require the prisoner to exhaust his remedies for the remedy to be 'available'"). The use of permissive terminology such as "may" by a prison policy regarding advancing of a claim through levels of a tiered grievance system "is irrelevant to the consideration of the exhaustion issue." Id. Exhaustion of that tiered grievance system is nevertheless required by the PLRA to bring a federal action.

B. Mitchell's Failure to Exhaust the Available Administrative Remedies

Defendants argue that Mitchell's "failure to appeal the denials and/or rejection of the grievance(s), which include his allegations in his complaint, is fatal to his claim because it constitutes a failure to exhaust his administrative remedies." (Doc No. 230 at 2; see also Doc. No.

7

214 at 12–13 (asserting that Mitchell never filed a single Level II grievance)). To support their motions, Defendants establish through Mitchell's own concessions that he did not appeal the rejection of any one of the relevant grievances. Indeed, Mitchell acknowledges that he did not appeal any of the four grievances he received a response to from the chairperson. (Doc. No. 227 ¶¶ 24, 28–30 (conceding that Mitchell did not appeal his January 9, January 24, January 25, or February 13, 2017, grievances)). And in Plaintiff's Brief in Support of Plaintiff's Reponses in Opposition to Defendants' Motion for Summary Judgment (Doc. No 222), Mitchell explicitly states that he never appealed any of the three grievances not returned to him once the period allotted for the chairperson to respond had elapsed. (See Doc. No. 222 at 6–7 (explaining that "no appeal could be made" for the grievances filed on January 10, January 27, and February 6, 2017)).

Mitchell has no answer to Defendants' showing that he failed to exhaust his administrative remedies. Rather he argues that: (1) the grievances were wrongly rejected (Doc. No. 222 at 5–6; Doc. No. 225 at 4–7); and (2) he was incapable of appealing the grievances that went unresponded-to, (Doc. No. 222 at 6–7). These arguments fail to account for PLRA's exhaustion requirement in any meaningful way.

Pursuant to the PLRA, in order to exhaust his administrative remedies, Mitchell was required to marshal his grievances through the Policy's three-tiered grievance review system. Woodford, 548 U.S. at 84–85 ("To properly exhaust his administrative remedies, an inmate must satisfy all deadlines and other procedural rules of the prison's grievance system for all issues about which he complains."). Though Mitchell rightly observes the Policy states "that the inmate *can* appeal a denial at Level I," (Doc. Nos. 222 at 6; 225 at 5 (emphasis added)), he takes the Policy's permissive language to mean that exhaustion is possible when an inmate forgoes that appeal. (Id.). This position is opposite the law of this Circuit. See Owens, 461 F.3d at 770 n.4 (explaining that

8

"although a remedy must be 'available' in order for a prisoner to be required to pursue it to exhaust his claim, this does not mean that the prison must require the prisoner to exhaust his remedies for the remedy to be 'available'"). Regardless of the reasons why the chairperson rejected Mitchell's grievances, Mitchell retained the opportunity to appeal the chairperson's decisions to the Policy's next level, and he has conceded that he did not do so prior to filing this suit.

For the same reasons, Mitchell's argument that he was unable to appeal the grievances that the chairperson did not respond to must fail. Under the Policy, if the window for Mitchell to receive a response to a Level I grievance closed without a response, he was free to pursue his appeal to the next two levels in the grievance process. The administrative remedy remained available for him to exhaust even if he did not receive a timely response from the chairperson. (Doc. No. 217-16 at 3); see also Whipple v. Rochelle, No. 1:15-0040, 2017 WL 9534760, at *7 (M.D. Tenn. Aug. 21, 2017), report and recommendation adopted, No. 1:15-CV-00040, 2017 WL 4325275 (M.D. Tenn. Sept. 29, 2017) (explaining that the Policy allows inmates to pursue the next step in the grievance process if a response is not received). Mitchell concedes that he never pursued that remedy. (Doc. No. 222 at 6–7). Accordingly, he has not exhausted his administrative remedies for those Level I grievances not returned to him. Hartsfield, 199 F.3d at 309.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (Doc. No. 213, 216) will be granted. Plaintiff's claims will be dismissed without prejudice.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE